STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT
Case Type:  Personal Injury

---

Brandon C. Dickson,

Plaintiff,

vs.

Joshua Stewart and Sundiata Bronson,
personally, individually, and in their
capacity as Minneapolis police officers,
and the City of Minneapolis,

Defendants.

Court File No. _____

**COMPLAINT**

<u>**Jury trial demanded**</u>

---

Comes now, the Plaintiff, Brandon C. Dickson, and as and for his Complaint against the Defendants, he states and alleges as follows:

## <u>INTRODUCTION</u>

1.    This is an action for money damages and declaratory relief brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First and Fourth Amendments to the United States Constitution as made applicable to the states pursuant to the Fourteenth Amendment to the United States Constitution, and under the common and statutory law of the State of Minnesota, against Defendants Joshua Stewart and Sundiata Bronson, both Minneapolis police officers, in their individual and official capacities, and against the City of Minneapolis.

2.    Defendants Bronson and Stewart seized, arrested, abused, and beat up Plaintiff Dickson with no reasonable articulable suspicion or probable cause or justification to support their interference with Dickson's liberties, or use of force against

Exhibit B

Dickson.  Defendants Bronson and Stewart then filed false police reports to sustain false and trumped up charges of obstruction of legal process, which were later dismissed.  Upon information and belief, Bronson and Stewart tried to cover up their misconduct, including by filing false police reports.

## PARTIES

3.      Plaintiff Brandon C. Dickson ("Dickson" or "Plaintiff") is, and was during the occurrences set forth in this Complaint, a resident of Minneapolis, Hennepin County, Minnesota.  Dickson is a Black male, born June 9, 1989.  Dickson is five feet seven inches (5' 7") tall and weighs approximately one hundred and fifty-five pounds (155 lbs).

4.      Defendant Joshua Stewart ("Stewart") was, during the occurrences set forth in this Complaint, a police officer for the City of Minneapolis Police Department. On information and belief, Stewart is a police officer for the City of Minneapolis as of the date of this Complaint.

5.      Defendant Sundiata Bronson ("Bronson") was, during the occurrences set forth in this Complaint, a police officer for the City of Minneapolis Police Department. On information and belief, Bronson is a police officer for the City of Minneapolis as of the date of this Complaint.

6.      Defendant City of Minneapolis ("City") is a municipality in the State of Minnesota, and was, at the time of the occurrences set forth in this Complaint, the employer of Stewart and Bronson.   On information and belief, the City is the employer of Bronson and Stewart as of the date of this Complaint.

Exhibit B

## ALLEGATIONS COMMON TO ALL COUNTS

7.     On Friday, September 9, 2011, around 10:30 p.m., Dickson was bicycling home from a church event.  Dickson was travelling south on Nicollet Mall in downtown Minneapolis.  Between South Ninth Street and South Eleventh Street, Nicollet Mall has two lanes of traffic, one in each direction.  South Tenth Street is a one-way street allowing for three lanes of traffic headed east.  The intersection of Nicollet Mall and South Tenth Street is controlled by traffic lights.

8.     The City of Minneapolis expressly permits bicyclists to travel on the streets of Nicollet Mall, twenty-four hours a day.

9.     At all times set forth in this Complaint which describe Dickson bicycling, Dickson was legally bicycling on Nicollet Mall.

10.     As Dickson approached the intersection of Nicollet Mall and South Tenth Street on his bicycle, he had the right-of-way, and the intersection was controlled by a green light for traffic heading north and south on Nicollet Mall, and a red light for traffic headed east on South Tenth Street.  As Dickson entered the intersection, the light remained green, and as Dickson passed through the intersection, the light changed to yellow.

11.     As Dickson passed through the intersection, Defendants Bronson and Stewart were stopped in their marked patrol car, facing east on South Tenth Street, at a red light, in the most northerly lane of South Tenth Street.  Bronson was in the driver's seat of the patrol car, and Stewart was in the passenger seat.

12.     After Dickson passed through the intersection and continued south on Nicollet Mall toward South Eleventh Street, Bronson made a right turn in the patrol car

3

Exhibit B

to head south on Nicollet Mall. As Dickson came to the midpoint of the block between South Tenth and Eleventh Streets, he heard the engine of the patrol car rev up behind him. Dickson looked back to see the patrol car and began moving to the side of the road to allow the officers to pass.

13.     At no point before Bronson and Stewart approached Dickson in their patrol car did they direct Dickson to take any action. Rather, Bronson directed the patrol car close to Dickson before Dickson reached the intersection at South Eleventh Street. As the front passenger door of the patrol car was parallel to Dickson, and while the patrol car was still moving, Stewart swung open the car door Dickson's direction, which caused Dickson to jump on his bicycle onto the curb. Bronson then stopped the car beside Dickson. Both Bronson and Stewart then started to emerge from the patrol car.

14.     As Dickson stood on the curb facing the officers, and with his hands up, he asked, "What is this?"

15.     At all times material Dickson was unarmed.

16.     At all times material, Dickson did not resist arrest.

17.     At all times material, Dickson posed no threat of injury to anyone.

18.     At all times material, Dickson had not committed a felony.

19.     At all times material, Dickson had not committed a gross misdemeanor.

20.     At all times material, Dickson had not committed a misdemeanor.

21.     At all times material, Dickson had not committed a petty misdemeanor.

22.     At all times material, there was no substantial likelihood that Dickson would not respond to a citation.

Exhibit B

23.     At this point, and at all times material, neither Bronson nor Stewart had reasonable articulable suspicion or probable cause to detain Dickson.

24.     Immediately upon exiting the passenger side of the car, Defendant Stewart approached Dickson, grabbed him by the arm, and said something to the effect of "You know you are not supposed to be biking down Nicollet Mall." On information and belief, Defendants Bronson and Stewart knew and were aware that bicycling is permitted on Nicollet Mall.

25.     Stewart then turned Dickson around to face the hood of the patrol car and directed Dickson to place his hands on the hood of the patrol car. Dickson complied.

26.     At least by this point, Defendants had seized Dickson within the meaning of the Fourth Amendment and that seizure continued until Dickson was released on bail hours later.

27.     As Stewart stood behind Dickson while Dickson had his hands on the hood of the car, both Defendants Stewart and Bronson repeated statements to the effect that Dickson knew he was not supported to be biking on Nicollet Mall. Neither Stewart nor Bronson said anything about Dickson failing to obey any traffic law other than that Dickson was not supposed to bike on Nicollet Mall. While making those statements, Defendant Stewart started searching Dickson without Dickson's permission or consent. Stewart reached into Dickson's right front pocket and retrieved Dickson's wallet and identification. Neither the wallet nor identification had any physical resemblance to a weapon or other dangerous object. Defendant Stewart left Dickson's cell phone in his back right pocket during the search. Defendant Stewart then placed Dickson into handcuffs, cuffed in the back. At the time Dickson was placed into

5

Exhibit B

handcuffs, neither officer had reasonable articulable suspicion or probable cause to arrest or detain Dickson, and neither had said anything to Dickson about Dickson failing to obey any traffic law other than that Dickson was not supposed to be biking on Nicollet Mall.

28.    While Dickson was being searched and cuffed by Stewart and Bronson, Dickson explained to Stewart and Bronson that he was just biking home from a church event, and that he had work the next day, and that he wanted to go home.

29.    Stewart placed Dickson, still in cuffs, in the back right seat of the patrol car as Dickson tried to explain his innocence.  Stewart and Bronson got back into the patrol car, with Stewart in the passenger seat and Bronson in the driver's seat.   They both then taunted Dickson.  Stewart said, "You don't work."  Bronson then said, "Yeah, you don't have a job."  Bronson continued, stating, "What, do you sell drugs?"  Stewart said, "You sell drugs and take drugs into church too?"  Stewart continued, "You don't read the Bible; you don't even know the first book."

30.    As they were taunting him, Stewart and Bronson reviewed Dickson's identification, and, on information and belief, began to check Dickson's public and other records.

31.    Dickson continued to plead his innocence, and Dickson asked Defendants why they did not catch some real criminals.  Bronson replied, "well, you are a real criminal."  Dickson replied that he knew what Bronson and Stewart were doing, that they were profiling him and abusing their power.

32.    Dickson had a right, protected by the First Amendment to the United States Constitution as made applicable to the States by the Fourteenth Amendment to

6

Exhibit B

the United States Constitution, to say what he said at all times material to this

Complaint.

33.     As Dickson, Bronson, and Stewart sat in the car, other people were

bicycling past.  Dickson pointed out to Bronson and Stewart that others were biking, and

repeated that biking on Nicollet Mall is permitted.  For the first time, Stewart made the

statement that Dickson did not stop for a red light, which was a false statement.

34.     When Dickson reminded Bronson and Stewart that they were abusing

their power and profiling Dickson, Stewart got visibly upset and told Dickson to "Shut the

fuck up."  Dickson continued to point out to the officers that they had no right to detain

him.

35.     Stewart said, in response, "I am tired of this shit."  Stewart then exited his

door, opened the back right passenger door where Dickson was sitting cuffed, and

struck Dickson in the neck, causing Dickson to slump to Dickson's left.  Stewart grabbed

Dickson by the neck, and repeated, "Shut the fuck up you smart little shit.  I'll fuck you

up.  You little dick."  Stewart then asked Dickson if Dickson wanted to fight.  Dickson

replied that it would be stupid to fight a police officer, who has a badge and a gun.

Stewart told Dickson he would take off his badge and gun and fight Dickson if Dickson

wanted to fight.  Dickson again stated that he did not want to fight.  Stewart then shut

the door started to search around the area of Dickson's bike.

36.     As Stewart was out of the car searching around Dickson's bicycle, Dickson

started talking to Bronson, who is also Black.   Dickson told Bronson that Bronson knew

what was happening, and that Bronson knows what was happening to Dickson happens

every day to young, Black men in Minneapolis.  Dickson asked Bronson how Bronson

7

Exhibit B

could be a part of it.   Bronson told Dickson to "Shut the fuck up." Dickson asked
Bronson if Bronson is proud to go home and tell a family member what he did at work
that day.  Bronson then exited the car, opened the right rear passenger door next to
Dickson, and grabbed Dickson by the shirt, elbowed Dickson in the ribs, and put his
forearm in Dickson's neck.  Bronson dragged Dickson, who was still cuffed, out of the
back seat of the car, ripping Dickson's shirt in the process.  As Bronson dragged
Dickson from car, he slung Dickson to the pavement on the street behind the patrol car,
which caused Dickson to hit his chin on the pavement.  Dickson was still cuffed behind
his back.

37.     As Dickson was on the ground, he heard Stewart ask someone what he
was doing.   As Stewart approached Bronson and Dickson, Dickson told Bronson and
Stewart that God was watching what had happened.  Bronson replied, sarcastically,
"Yeah, I am pretty sure God sees this."

38.     Bronson then placed Dickson back into the back seat of the car, still in
cuffs. Bronson and Stewart both got back into the front seat of the car and drove
around the corner, onto Eleventh Street, facing west.

39.     Stewart then exited the patrol car and went back around the corner where
Dickson's bike had been to look for something.  While Dickson was still in the car with
Bronson, he managed to retrieve his phone from his back pocket and call his friend on
speaker to tell his friend what had happened and that he would need to be picked up.
Bronson heard Dickson talking on the phone, exited the vehicle, came to the back door,
took the phone, and turned it off.

8

Exhibit B

40.    Bronson and Stewart then stood outside the car discussing something. Bronson got back into the car and Stewart went to the trunk of the car to retrieve a book.

41.    When Stewart got back into the front passenger seat of the car, Bronson and Stewart discussed what they could "book [Dickson] for." Dickson did not learn what he was being charged with until later when he was released on bail.

42.    Stewart and/or Bronson then called for another squad of police officers. Two white male police officers arrived and one questioned Dickson about what had happened. Dickson was never read any *Miranda* warning. Dickson told the officer to ask Bronson and Stewart. The officer claimed that he had not been there, did not know what happened, and was not arresting Dickson. Then, a third white male police officer arrived, switched out the handcuffs with new handcuffs, and placed Dickson into the back of a police wagon, which had arrived.

43.    Dickson was sitting in the back of the police wagon for about five minutes as it remained parked at the scene, and then Dickson was taken and placed in a Hennepin County Jail holding cell for at least a couple hours until he was released after posting bail in the amount of $50.00. When Dickson asked for his bicycle back, but he was informed that there was no record of his bicycle. Dickson has still not received his bicycle back.

44.    Defendants Bronson and Stewart filed false and misleading police reports in support of trumped up and unsupportable charges that Dickson obstructed the legal process and failed to obey a traffic signal.

9

Exhibit B

45.     The next day, September 10, 2011, Dickson sought medical treatment for the pain caused by Defendants Bronson and Stewart, and incurred medical expenses.

46.     Dickson was charged with obstruction of justice, but he was never charged with failing to stop for a red light.

47.     The obstruction of justice charge was later dismissed by the prosecutor, and Dickson has not been convicted of anything resulting from the facts set forth above.

48.     No charges are pending against Dickson related to the facts set forth above.

**COUNT I (Violation of 42 U.S.C. § 1983 - Unreasonable Search and Seizure)**

49.     Dickson incorporates herein by reference all previous paragraphs of the Complaint as if set forth fully herein.

50.     By their actions, Stewart and Bronson, under color of state law, violated and deprived Dickson of his clearly established and well-settled civil rights to be free from unreasonable search and seizure.

51.     Stewart and Bronson subjected Dickson to this deprivation of his rights either maliciously or by acting with reckless disregard for whether Dickson's rights would be violated by their actions.

52.     As a direct and proximate result of the acts and omissions of Stewart and Bronson, Dickson suffered permanent injury, was forced to endure and will in the future suffer great bodily and mental harm, and was thereby damaged in an amount in excess of $50,000.00 as will be proved at trial.

Exhibit B

## COUNT II (Violation of 42 U.S.C. § 1983 - Retaliation)

53.     Dickson incorporates herein by reference all previous paragraphs of the Complaint as if set forth fully herein.

54.     Dickson engaged in activity protected by the First Amendment to the United States Constitution, as made applicable to the states through the Fourteenth Amendment to the United States Constitution, when he spoke to the Defendants and otherwise as set forth above.  Dickson's right to exercise his First Amendment freedoms without facing retaliation is clearly established.

55.     Stewart and Bronson retaliated against Dickson, which would chill a person of ordinary firmness from continuing in that activity.

56.     Stewart and Bronson's retaliation was unjustified and substantially motivated by Dickson's exercise of his clearly established rights under the First Amendment.

57.     As a direct and proximate result of the acts and omissions of Stewart and Bronson, Dickson suffered permanent injury, was forced to endure and will in the future suffer great bodily and mental harm, and was thereby damaged in an amount in excess of $50,000.00 as will be proved at trial

## COUNT III (Violation of 42 U.S.C. § 1983 - Excessive Force)

58.     Dickson incorporates herein by reference all previous paragraphs of the Complaint as if set forth fully herein.

59.     By their actions, Stewart and Bronson, under color of state law, violated and deprived Dickson of his clearly established and well-settled civil rights to be free from excessive force.

Exhibit B

60.     Stewart and Bronson subjected Dickson to this deprivation of his rights either maliciously or by acting with reckless disregard for whether Dickson's rights would be violated by their actions.

61.     As a direct and proximate result of the acts and omissions of Stewart and Bronson, Dickson suffered permanent injury, was forced to endure and will in the future suffer great bodily and mental harm, and was thereby damaged in an amount in excess of $50,000.00 as will be proved at trial.

### COUNT IV (Assault)

62.     Dickson incorporates herein by reference all previous paragraphs of the Complaint as if set forth fully herein.

63.     The actions of Bronson and Stewart placed Dickson in immediate fear of imminent threat of physical or bodily harm and were intended to cause such fear in Dickson while Bronson and Stewart had the apparent and present ability to cause such harm.

64.     The actions of Bronson and Stewart were unjustified, were not the actions of reasonably well-trained officers, and were committed with malice and/or racial animus toward Dickson.

65.     As a result of these actions, Dickson was placed in fear of imminent harm, injury, or death, resulting in damage to Dickson.

66.     As a direct and proximate result of the actions of Defendants Bronson and Stewart, Dickson has suffered damages in an amount in excess of $50,000.00 as will be proved at trial.

Exhibit B

## COUNT V (Battery)

67.     Dickson incorporates herein by reference all previous paragraphs of the Complaint as if set forth fully herein.

68.     Defendants Bronson and Stewart intentionally caused harmful and/or offensive contact with Dickson, without Dickson's permission.

69.     The actions of Bronson and Stewart were unjustified and unreasonable, were not the actions of reasonably well-trained officers, and were committed with malice and/or racial animus toward Dickson.

70.     As a direct and proximate result of the actions of Defendants Bronson and Stewart, Dickson has suffered damages in an amount in excess of $50,000.00 as will be proved at trial.

## COUNT VI (Conversion)

71.     Dickson incorporates herein by reference all previous paragraphs of the Complaint as if set forth fully herein.

72.     Defendants exercised control over Dickson's bicycle in a way that was inconsistent with Dickson's right to that bicycle, and Defendants intentionally deprived Dickson of possession of the bicycle permanently, or for an indefinite period of time.

73.     As a direct and proximate result of Defendants' conversion of Dickson's bicycle, Dickson has been damaged in the fair value of the bicycle, in an amount to be proved at trial of no less than $200.00.

## COUNT VII (Conspiracy)

74.     Dickson incorporates herein by reference all previous paragraphs of the Complaint as if set forth fully herein.

Exhibit B

75.     Stewart and Bronson conspired with one another to deprive Dickson of his constitutional rights as described herein.

76.     As a direct and proximate result of the acts and omissions of Stewart and Bronson, Dickson suffered permanent injury, was forced to endure and will in the future suffer great bodily and mental harm, and was thereby damaged in an amount in excess of $50,000.00 as will be proved at trial.

77.     Bronson and Stewart are jointly and severally liable for all damages caused to Dickson set forth herein.

### COUNT VIII (Respondeat Superior/Vicarious Liability)

78.     Dickson incorporates herein by reference all previous paragraphs of the Complaint as if set forth fully herein.

79.     Pursuant to Minn. Stat. § 466.02, as well as the doctrine of respondeat superior as the employer of Bronson and Stewart, the City is liable for the acts of Defendants Bronson and Stewart set forth herein.

### COUNT IX (Monell Claim)

80.     Dickson incorporates herein by reference all previous paragraphs of the Complaint as if set forth fully herein.

81.     On information and belief, Defendant City has failed to properly train, supervise and/or discipline Bronson and Stewart.  The unconstitutional and illegal actions of Bronson and Steward were carried out pursuant to an unconstitutional policy, procedure or practice of the City, as executed by Defendants Bronson and Stewart, in violation of Dickson's constitutional rights.

14

Exhibit B

82.     On information and belief, the unconstitutional policies of the Defendants included the policy, custom, and procedure of failing to train officers to engage in safe and well-established procedures when making an arrest, or deciding when to pursue and make an arrest, and resulted in the violation of Dickson's constitutional rights.

83.     As a direct and proximate result of the negligent, intentional, or unconstitutional policies of the City, Dickson suffered and will suffer damages in an amount in excess of $50,000.00 as will be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE,  Dickson prays for judgment against Defendants, and each of them, as follows:

A.     Declaring and adjudging the Defendants violated the laws as complained of herein;

B.     Awarding damages to Dickson in an amount in excess of $50,000.00 as will be proved at trial, together with prejudgment interest;

C.     Awarding Dickson his costs, disbursements, and reasonable attorney's fees;

D.     Prohibiting Defendants from engaging in profiling of Black men, and requiring that Defendants institute training and policies to protect against continued profiling of Black men;

E.     Requiring all Defendants to issue an apology to Dickson;

F.     For such further and additional relief as may be just and equitable; and

G.     For a jury trial, which is hereby demanded.

Exhibit B

**FERDINAND F. PETERS, ESQ. LAW FIRM**

Dated: 3-7-2012

By: _____
Ferdinand F. Peters (#157041)
Benjamin Loetscher (#0389037)
Lakes and Plains Office Building
842 Raymond Ave., Suite 200
St. Paul, MN 55114
Telephone: (651) 647-6250
Fax: (651) 251-1183
**Attorneys for Plaintiff**

## ACKNOWLEDGMENT

The undersigned hereby acknowledges section 549.211 of the Minnesota Statutes, and its effect.

Dated: 3-7-2012

By: _____
Benjamin Loetscher

Exhibit B